IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| G.R. WERTH & ASSOCIATES, INC., 17168 Fillmore Street West Olive, Michigan 49460, | ) ) ) ) | CASE NO.: JUDGE |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| PERPETUAL EVOLUTION DESIGNS LLC, 1241 Fenn Road Tallmadge, Ohio 44728, | ) ) ) ) ) | **COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT** |
| And | ) ) | **(Jury Demand Endorsed Hereon)** |
| JAMES R. BLAIR, JR. 1241 Fenn Road Tallmadge, Ohio 44728, | ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiff G.R. Werth & Associates, Inc. ("Werth" or "Plaintiff") asserts the following claims against Defendants Perpetual Evolution Designs LLC ("PED") and James R. Blair, Jr. ("Blair" and together with PED, the "PED Group" or "Defendants").

**NATURE OF THE ACTION**

1. This is a civil action for damages and injunctive relief alleging acts of trademark infringement under the Federal Trademark Act, 15 U.S.C. §1114, and the Lanham Act, 15 U.S.C. §1125(a), violations of the Ohio Deceptive Trade Practices Act, O.R.C. §4165, *et seq.*, and for breach of contract.

1

**THE PARTIES**

2. Plaintiff Werth is a business incorporated in Illinois, and in good standing, with its primary place of business in Michigan.

3. Upon information and belief, Defendant PED is an Ohio limited liability company with its principal place of business in northern Ohio.

4. Upon information and belief, Defendant Blair is an individual residing in northern Ohio and is the sole member of PED. On Defendants' network of websites (www.inflatableductplug.com) and (www.perpetualevolution.com), the PED Group asserts that they design and fabricate strikeable targets and analogs for automotive crash avoidance testing and inflatable duct plugs for use in combined cycle power plants. The PED Group further asserts that they design cold air inflatables and sealed inflatables.

**JURISDICTION AND VENUE**

5. This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §1331 (federal question), and 28 U.S.C. §1338 (Acts of Congress related to trademark). On information and belief, the parties are citizens of different states and the amount in controversy exceeds the jurisdictional limit of this Court. Thus, jurisdiction over the state law claims is also appropriate under 28 U.S.C. § 1367(a) and principles of supplemental jurisdiction. The state law claims are so related to Plaintiff's federal trademark claims as to be part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), and this Court may properly exercise personal jurisdiction over Defendants, because the Defendants operate their

principal place of business in the State in which this district is located and all or a substantial part of the events or omissions giving rise to the claim occurred in this district.

## BACKGROUND
### Plaintiff's Trademark

7. G.R. Werth & Associates, Inc. has provided mechanical equipment to the power and heavy industrial industries for over 30-years and is the exclusive distributor of the Duct Balloon® product line.

8. Werth has used the DUCT BALLOON® trademark consistently and continuously for more that 20-years, owns the domain www.ductballoon.com, and all common law rights and a Federal Trademark Registration for DUCT BALLOON® (Registration No. 5,273,164 – First use in commerce 1/1/1998) (the "Duct Balloon Mark").

9. The Duct Balloon Mark has been continuously used by Plaintiff and never abandoned.

10. The Duct Balloon Mark constitutes constructive notice to all persons of its exclusive rights.

11. Werth adopted and has continuously used the Duct Balloon Mark since at least January 1998 and expends significant time, money and effort in ensuring that its products identified by the Duct Balloon Mark comply with stringent quality standards. Werth operates pursuant to the highest quality standards of customer service, and, as well, spends significant money in advertising and promoting its products and services. These substantial expenditures of time, money and effort have resulted in a reputation for exceptionally high-quality standards. Werth has vigorously protected the reputation and goodwill of the Duct Balloon Mark by maintaining the highest possible industry standards.

12. The Duct Balloon Mark is used by Werth to identify its Duct Balloon® custom designed inflatable barrier that can be inserted through most existing access doors and perform much better than homemade barriers. The Duct Balloon® is constructed out of a variety of durable wear resistant fabrics with some rated from -33°F (-36°C) and up to 500°F (260°C). Fabric selection is based on the type of application, existing access door size, operating temperature and ease of installation and removal from duct work. The Duct Balloon® uses the supplied 120V or 230V blower system, installs quickly and becomes fully inflated in 3 minutes or less. The Duct Balloon® can be quickly removed by turning off the blower and opening the large deflation zipper. Applications for the Duct Balloon® are in SCR's, FGD's, Gas Turbines, HRSG Exhaust Stacks, Primary Air Ducts in Coal Pulverisers, Axial Flow Fans, Inflatable Bulkheads, Inflatable Platforms, and F.M.E.

13. Werth pioneered the original Duct Balloon® concept with **American Electric Power** and then improved its design with the help of **Penn State University.**

14. Werth is the only supplier of this type of product that can calculate predictive holding values. As the OEM, Werth has the required knowledge which has been attained from hundreds of field-tested applications to ensure a safe installation. Companies like GE, Siemens, Alstom, B&W, Duke Energy, Southern Company, Calpine, and many others have purchased Werth's Duct Balloon® products. Werth has installed over 1,000 Duct Balloon® inflatable barriers world-wide.

15. As a result of Werth's continuous and exclusive use of the Duct Balloon Mark in connection with its products and services, the Duct Balloon Mark enjoys wide public acceptance and association with Werth and has come to be recognized widely and favorably by the public as an indicator of the origin of Werth's products and services.

16. As a result of Werth's extensive use and promotion of the Duct Balloon Mark, Werth has built up and now owns extremely valuable goodwill that is symbolized by the Duct Balloon Mark.

### Contract between Werth and the PED Group

17. Upon information and belief, the PED Group manufactures and sells a competitive, but substandard, inflatable barrier product.

18. Upon information and belief, the PED Group branded its inflatable barrier product as the "Inflatable Duct Plug".

19. Upon information and belief, and for many years and in utter disregard of Werth's Duct Balloon Mark, the PED Group used the term "Duct Balloon" in virtually every aspect of the business, including in domain names such as www.ductballoons.com, Meta tags, website text, video presentations that appear on various social media platforms and general advertising.

20. In October 2015, when Werth, through legal counsel, objected to the PED Group's intentional, continued and pervasive infringement of the Duct Balloon Mark, the PED Group agreed: (i) to immediately cease and desist use of , and cancel and abandon, the website www.ductballoons.com; (ii) to immediately cease and desist use of the word or phrase "Duct Balloon", or "Duct Balloons", in product description and marketing; (iii) that any future website(s) for use with this product would use a substantially different name; and (iv) that any future website(s) for use with this product would use text which is substantially different than used on the Werth site.

21. The PED Group breached the 2015 agreement with Werth by continuing to operate the infringing domain and not removing text from the website(s) that was copied directly from

Werth's website. Moreover, the PED Group continued to use the term "Duct Balloon" in virtually every aspect of the business.

22. In April 2018, Werth again, through legal counsel, demanded that the PED Group cease and desist all use of the Duct Balloon Mark, cancel or transfer the infringing domain name(s), and take down the text and graphics from the website(s) that was copied directly from Werth's website.

23. In response, the PED Group agreed, *inter alia*, to "immediately cease, desist and permanently refrain from using 'DUCT BALLOON', 'DUCT BALLOONS' **and any other mark, name, or design confusingly similar to**" the Duct Balloon Mark [Emphasis Added]; immediately "remove and/or take down any and all media of any form or type that contains or uses the term 'DUCT BALLOON' or 'DUCT BALLOONS' **from any and all social media or media delivery platforms**" [Emphasis Added]; scrub from the "[PED Group's] website(s) the term 'DUCT BALLOON' or 'DUCT BALLOONS' public facing or in Meta data", and remove "any text or diagrams" on the PED Group's website(s) that were "copied from Werth's website". The PED Group further agreed to provide a table of any such material removed. (See executed "Contract", **Exhibit "A1" and Exhibit "A2"**).

**Defendant's Infringing Activities**

24. Upon information and belief, to accelerate the PED Group's push into the inflatable barrier market, the PED Group intentionally and in many instances completely copied pages of Plaintiff's proprietary text, graphics and diagrams from its website. On those pages, the PED Group merely modified most references of Werth's Duct Balloon Mark to "Inflatable Duct Plug Balloon", but only after Werth demanded that the PED Group remove all website content that the

6

PED Group copied. See representative web captures from the PED Group's website (www.inflatabledcutplug.com), **Exhibit "B", Exhibit "C" and Exhibit "D"**.

25. Even though the PED Group's inflatable barrier product is branded as, and upon information and belief recognized as, the "Inflatable Duct Plug", the PED Group consistently refers to the product as the "inflatable duct plug balloon". See representative web captures from the PED Group's website (www.inflatabledcutplug.com), **Exhibit "E", Exhibit "F" and Exhibit "G"**.

26. Upon information and belief, the PED Group has promoted and continues to promote their inflatable barrier product on social media by using the tags (in various forms): *#inflatable #Duct #Balloon #Plugs*. See images of PED's social media post below:



7

27. Defendants' regular use of the words that include the entirety of the Duct Balloon Mark has resulted in advertisements and websites displaying the PED Group's *Inflatable Duct Plug* products and services to prominently appear in the results of internet searches for Werth's Duct Balloon® products and services. See representative example of a *Google* search for "Duct Balloon", **Exhibit "H"**. The third result on the primary page is Defendants' website (www.inflatableductplug.com) featuring Defendants' *Inflatable Duct Plug* product(s) and services.

28. Upon information and belief, Werth lost a potential sale, and possibly more, that is likely attributable to Defendants' use of the words "Duct" and "Balloon" on the forward-facing pages of the PED Group's website(s), meta-tag data, and social media tags. Werth was in the process of providing a quote for its Duct Balloon product and services to a potential customer in Saudi Arabia, when it noticed a social media post from the PED Group boasting about sending an *Inflatable Duct Plug* to a customer in Saudi Arabia. See image of the PED Group's social media post below:



29. Upon information and belief, it is exceptionally doubtful that an entity in Saudi Arabia, an unknown to the PED Group, would have found the PED Group's website(s), social media presence or *Inflatable Duct Plug* product(s) if the PED Group was not using the words "Duct" and "Balloon" on the forward-facing pages of the PED Group's websites, meta-tag data, and social media tags.

30. Upon information and belief, it is likely that when the entity in Saudi Arabia was searching for Duct Balloon® on the internet, it mistakenly visited the PED Group's website(s), and, even if it learned along the way that there is no connection between the PED Group and Werth, nonetheless purchased the PED Group's product.

31. Defendants' foregoing acts may have and are likely and intended to cause confusion and mistakes among the public, customers, prospective customers, creditors, suppliers and others and to deceive them as to, *inter alia*, (i) the affiliation, connection and association of Defendants with Plaintiff, (ii) the origin, sponsorship, or approval of Defendants' goods and/or services by

9

Plaintiff, and (iii) the nature, characteristics and quality of Defendants' goods and/or services, all of which are for the purpose of enhancing the commercial value of, or selling or soliciting sales of, Defendants' goods and/or services.

32. Defendant's foregoing acts have caused and will continue to cause damages and irreparable injury to Plaintiff through, *inter alia*, lost profits and/or opportunities, and damage to Plaintiff's reputation.

33. The PED Group acted willfully or knew or should have known that such actions constitute infringement.

34. Plaintiff has suffered damages and is in danger of suffering further damages from the PED Group's unlawful practices.

35. Due to Defendants' intentional, flagrant and willful infringing activities, and refusal to remove Plaintiff's proprietary text, graphics and diagrams from the PED Group's website(s), all breaches of the Contract, Werth is left with no choice but to file this lawsuit seeking injunctive relief and damages that have resulted from Defendants' manifold infringements.

**FIRST CAUSE OF ACTION**
**FEDERAL TRADEMARK INFRINGEMENT**
**Violation of 15 U.S.C. § 1114**

36. Plaintiff incorporates by reference the allegations of paragraphs 1 - 35 of this Complaint.

37. Plaintiff owns the Duct Balloon Mark.

38. Defendants' use of the words "Duct" and "Balloon" on the forward-facing pages of the PED Group's website(s), meta-tag data, and social media tags is likely to cause confusion, mistake, or deception as to the source, affiliation, sponsorship, or authenticity of Defendants' goods and services. As a result of Defendants' unauthorized use of use of the words "Duct" and

"Balloon" on the forward-facing pages of the PED Group's website(s), meta-tag data, and social media tags to identify the Defendants' *Inflatable Duct Plug* product(s) and services, the public is likely to believe that the Defendants' *Inflatable Duct Plug* product(s) has been manufactured, approved by, or is affiliated with Werth.

39. Defendants' unauthorized use of the words "Duct" and "Balloon" on the forward-facing pages of the PED Group's website(s), meta-tag data, and social media tags to identify the Defendants' *Inflatable Duct Plug* product(s) and services falsely represents Defendants' *Inflatable Duct Plug* product(s) as emanating from or being authorized by Werth and places beyond Werth's control quality of products being sold that are likely to be confused with Werth's Duct Balloon® products.

40. Since there is no essential reason for Defendants to use the word "balloon" to identify Defendants' "Inflatable Duct Plug", the Defendants are intentionally using the word "Balloon" rather than or in combination with the word "inflatable" on the forward-facing pages of the PED Group's website(s), meta-tag data, and social media tags to sell a competing product(s) and to create and intensify the internet-related initial-interest confusion that has already resulted in lost sales of Werth's Duct Balloon® products and services.

41. Defendants' infringement of Werth's Duct Balloon Mark is willful and intended to reap the benefit of the goodwill of Werth and violates 15 U.S.C. § 1114(1).

42. Werth is also entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a). Werth has no adequate remedy at law for Defendants' wrongful conduct because, among other things, the Defendants' infringement constitutes harm to Werth such that Werth could not be made whole by any monetary award; if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity

of the Defendants' *Inflatable Duct Plug* product(s); and the Defendants' wrongful conduct, and the resulting damage to Werth, is continuing.

43. Werth is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION
### Federal Unfair Competition, False advertising, False Designation of Origin, and Passing Off
### Violation of 15 U.S.C. §1125(a)

44. Plaintiff incorporates by reference the allegations of paragraphs 1 - 43 of this Complaint.

45. Defendants' use of the words "Duct" and "Balloon" on the forward-facing pages of the PED Group's website(s), meta-tag data, and social media tags has caused internet-related initial-interest confusion and is likely to cause confusion, mistakes, or deception as to the source, origin, affiliation, connection, or association of Defendants' goods, services, or commercial activities with Plaintiff, or as to the approval of Defendants' goods, services, or commercial activities by Plaintiff, and thus constitutes infringement of Plaintiff's rights in its Duct Balloon Mark in violation of 15 U.S.C. § 1125(a).

46. Defendants' infringement of Plaintiff's rights in the Duct Balloon Mark occurred with Defendants' knowledge of Plaintiff's ownership in and use of the Duct Balloon Mark.

47. Defendants have intentionally, deliberately and willfully violated 15 U.S.C. § 1125(a).

48. By its aforesaid conduct, calculated to increase business and profits by deceiving and confusing members of the public, Defendants have and continue to misappropriate the valuable goodwill of Plaintiff's Duct Balloon Mark, to infringe Plaintiff's rights therein, and to unfairly compete with Plaintiff and Plaintiff has no adequate remedy at law. Plaintiff is entitled,

therefore, not only to monetary compensation, but also to injunctive relief pursuant to 15 U.S.C. §§ 1116-1118, as more fully set forth below.

## THIRD CAUSE OF ACTION
### Breach of Contract

49. Plaintiff incorporates by reference the allegations of paragraphs 1 - 48 of this Complaint.

50. Werth and the PED Group agreed that the PED Group would "immediately cease, desist and permanently refrain from using 'DUCT BALLOON', 'DUCT BALLOONS' **and any other mark, name, or design confusingly similar to**" the Duct Balloon Mark [Emphasis Added]; immediately "remove and/or take down any and all media of any form or type that contains or uses the term 'DUCT BALLOON' or 'DUCT BALLOONS' **from any and all social media or media delivery platforms**" [Emphasis Added]; scrub from the PED Group's website(s) "the term 'DUCT BALLOON' or 'DUCT BALLOONS' public facing or in Meta data", and remove "any text or diagrams" on the PED Group's website(s) that were "copied from Werth's website".

51. Werth and the PED Group agreed that the PED Group would provide to Werth a table of any of Werth's text or diagrams removed from the PED Group's website(s).

52. To document this agreement, the PED Group executed the Contract attached as **Exhibit "A1" and Exhibit "A2"**.

53. The PED Group breached the Contract by failing to (i) refrain from using "DUCT BALLOON", "DUCT BALLOONS" **and** any other mark, name, or design confusingly similar to the Duct Balloon Mark (ii) take down or scrub use of the words "Duct" and "Balloon" on the forward-facing pages of the PED Group's website(s), meta-tag data, and social media tags, (iii)

remove any text or diagrams on the PED Group's website(s) that were copied from Werth's website, and (iv) provide a table of any such material removed.

54. As a direct and proximate cause of the PED Group's actions, Werth has been damaged in a sum in excess of $25,000, to be proven at trial, all for which the PED Group is liable.

55. Additionally, the PED Group is liable for an additional sum in excess of $25,000, to be proven at trial, as and for punitive damages.

## FOURTH CAUSE OF ACTION
### Ohio Deceptive Trade Practices, R.C. 4165 *et seq.*

56. Plaintiff incorporates by reference the allegations of paragraphs 1 - 55 of this Complaint.

57. Defendants' actions set forth herein constitute continued violations of Ohio's Deceptive Trade Practices Act, specifically, R.C. 4165.02(A)(1), (2), (3), (7), (9) and (10).

58. Defendants' use of the words "Duct" and "Balloon" on the forward-facing pages of the PED Group's website(s), meta-tag data, and social media tags in connection with Defendants' *Inflatable Duct Plug* product(s) tends falsely to represent or designate that Defendants' *Inflatable Duct Plug* product(s) and services are licensed by, sponsored by, and/or otherwise affiliated with Plaintiff, when in fact Defendants have no connection with or authorization from Plaintiff. This constitutes unfair competition and false designation of origin in violation of R.C. 4165, *et seq.*, which violation has damaged and is likely to continue to damage Plaintiff.

59. As a proximate result of Defendants' deceptive trade practices, Werth has been damaged in an amount exceeding $75,000.00 to be proven at trial.

60. On information and belief, as a proximate result of Defendants' deceptive trade practices causing, among other things, internet-related initial-interest confusion, Defendants have unlawfully profited in an amount to be proven at trial.

61. The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause, Plaintiff irreparable injury for which Plaintiff has no adequate remedy at law. Therefore, Plaintiff is entitled to injunctive relief pursuant to R.C. 4165.03(A).

62. Defendants have willfully and knowingly engaged in deceptive trade practices in violation of R.C. 4165.02, and therefore Werth is entitled to an award of reasonable attorneys' fees pursuant to R.C. 4165.03(B).

63. If not enjoined, Plaintiff will suffer immediate and irreparable harm in that any value in the Duct Balloon Mark will be lost.

64. If not enjoined, there is a strong likelihood of further injury to Plaintiff's business reputation and dilution of the distinctive value and quality of its Duct Balloon Mark.

65. If not enjoined, consumers and other purchasers will continue to be misled and confused as to whether there is an affiliation between the PED Group and Werth.

66. Plaintiff has shown a probable right of recovery and likelihood of success on the merits of its claims against Defendants and that Plaintiff will suffer imminent, irreparable harm without Court intervention, for which there is no adequate remedy at law.

### FIFTH CAUSE OF ACTION
### Declaratory Judgment

67. Plaintiff incorporates by reference the allegations of paragraphs 1 - 66 of this Complaint.

68. There presently exists a real, live, actual and justiciable controversy between Werth and Defendants concerning Defendants' right to use the words "Duct" and "Balloon" on the forward-facing pages of the PED Group's website(s), meta-tag data, and social media tags in any form or fashion in connection with Defendants' *Inflatable Duct Plug* product(s) and services.

69. Pursuant to 28 U.S.C. § 2201 and/or R.C. 2721, *et seq.*, Werth is entitled to, and requests, a judgment declaring that it is the owner of the entire right, title and interest in and to the Duct Balloon Mark, that the Duct Balloon Mark has acquired secondary meaning and identifies only Werth's Duct Balloon products and services, that Defendants' use of the words "Duct" and "Balloon" on the forward-facing pages of the PED Group's website, meta-tag data, and social media tags tends falsely to represent or designate that Defendants' *Inflatable Duct Plug* product(s) and services are licensed by, sponsored by, and/or otherwise affiliated with Plaintiff , and for additional declarations as set forth in Plaintiff's Demand for Relief.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A. A Declaration that Werth is the owner of the entire right, title and interest in and to the Duct Balloon Mark;

B. A Declaration that the Duct Balloon Mark has acquired secondary meaning and identifies only Werth's Duct Balloon products and services;

C. A Declaration that Werth's rights in its Duct Balloon Mark are valid, enforceable and violated by Defendants and that Defendants have infringed Werth's rights under relevant federal and state laws and regulations;

D. A Declaration that Defendants' use of the words "Duct" and "Balloon" on the forward-facing pages of the PED Group's website(s), meta-tag data, and social media tags tends falsely to represent or designate that Defendants' *Inflatable Duct Plug* product(s) and services are licensed by, sponsored by, and/or otherwise affiliated with Plaintiff;

16

E. A Declaration that Defendants breached the Contract with Werth by failing to (i) refrain from using "DUCT BALLOON", "DUCT BALLOONS" and any other mark, name, or design confusingly similar to the Duct Balloon Mark (ii) take down or scrub use of the words "Duct" and "Balloon" on the forward-facing pages of the PED Group's website(s), meta-tag data, and social media tags, (iii) remove any text or diagrams on the PED Group's website(s) that were copied from Werth's website, and (iv) provide a table of any such material removed;

F. A Declaration that Defendants have falsely designated that the PED Group's goods and services may perhaps originate from Plaintiff and that Defendants have unfairly competed with Plaintiff and passed off the PED Group's products and services as those of Plaintiff in violation of the laws of Ohio;

G. A Judgment that Defendants, its owners, principals, officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, be preliminarily and permanently enjoined and restrained from: (1) using Plaintiff's Duct Balloon Mark, any marks incorporating the Duct Balloon Mark and any copy, reproduction, colorable imitations or variations thereof; (2) using the words "Duct" and "Balloon" on the forward-facing pages of the PED Group's website(s), meta-tag data, and social media tags; (3) using any trademark, service mark, name, logo, or source designation of any kind that is likely to cause confusion, mistake, deception or public misunderstanding that Plaintiff's Duct Balloon® products and services are produced or provided by Defendants, or otherwise misrepresenting in any way the source of origin of any products Defendants sell or any services Defendants provide; and (4) otherwise infringing Plaintiff's Duct Balloon Mark and competing unfairly with Plaintiff;

H. A Judgment that Defendant be ordered: (1) to remove any and all use of the word "Balloon" when making reference to Defendants' *Inflatable Duct Plug* in (a) any social

media platforms, including, without limitation, Facebook, LinkedIn, Twitter and Snapchat, (b) any online marketplaces, including, without limitation, Amazon and eBay, (c) any website pages and/or meta-data, including, without limitation, all websites owned, used and/or controlled by the PED Group, and (d) any Internet search engines such as Google, Bing and Yahoo; (2) to correct any mistakes by third parties referencing Plaintiff's Duct Balloon® products and services in designating Defendants' *Inflatable Duct Plug* and/or services; (3) to remove any text or diagrams on its website and/or any forward facing materials that are proprietary and are the property of Werth and that were copied from Werth or Werth's website; and (4) to provide a table of any text or diagrams removed;

   I. A Judgment that Defendants willfully violated Plaintiff's rights and, consequently, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

   J. A Judgment that as a direct and proximate cause of the PED Group's actions, Werth has been damaged in a sum in excess of $25,000, to be proven at trial, all for which the PED Group is liable;

   K. A Judgment that Defendants be required to pay to Plaintiff punitive and exemplary damages;

   L. A Judgment that Defendants be required to pay to Plaintiff all attorney fees, expenses and costs incurred in this action;

   M. That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraphs G and H, above;

    N.  That Plaintiff be granted such further relief as this Court may deem appropriate.

|  | Respectfully submitted, |
|---|---|
| OF COUNSEL: | */s/Glenn R. Wilson*<br>GLENN R. WILSON (0044054)<br>Gwilson@westonhurd.com<br>MARK F. KRUSE (0029989)<br>Mkruse@westonhurd.com<br>**Weston Hurd LLP**<br>1300 East 9th Street, Suite 1400<br>Cleveland, Ohio 44114-1862<br>Telephone: (216) 241-6602<br>Facsimile: (216) 621-8369 |

## JURY DEMAND

Plaintiff, as provided by Rule 38 of the Federal Rules of Civil Procedure, requests trial by jury in the above-captioned matter.

|  | Respectfully submitted, |
|---|---|
| OF COUNSEL: | */s/Glenn R. Wilson*<br>GLENN R. WILSON (0044054)<br>Gwilson@westonhurd.com<br>MARK F. KRUSE (0029989)<br>Mkruse@westonhurd.com<br>**Weston Hurd LLP**<br>1300 East 9th Street, Suite 1400<br>Cleveland, Ohio 44114-1862<br>Telephone: (216) 241-6602<br>Facsimile: (216) 621-8369 |

## VERIFICATION

I, GARY WERTH, being first duly sworn, affirm that I am the co-owner/operator of Plaintiff. I hereby affirm that, to the best of my knowledge, all of the allegations in this Complaint are true, except for those asserted to be based on information and belief, and as to those, I believe them to be true.

Dated: 4/22/22

_____Gary R. Werth_____

STATE OF ~~OHIO~~ Michigan

COUNTY OF Ottawa

The foregoing instrument was acknowledged before me this 22 April 2022 (date) by Gary Werth (name of officer or agent, title of officer or agent) of G.R. Werth & Associates, INC (name of corporation acknowledging) an Illinois Corp (state or place of incorporation) corporation, on behalf of the corporation.

_____Amanda M. Sluis_____
Notary Public

Printed Name: Amanda M. Sluis

My Commission Expires:

11 May 2025

AMANDA M SLUIS
Notary Public - State of Michigan
County of Ottawa
My Commission Expires May 11, 2025
Acting in the County of Ottawa